UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| WILLIE JAMES MARSHALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-1132-GMB |
| ) | |
| KILOLO KIJAKAZI,[1] Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

On October 31, 2017, Plaintiff Willie Marshall filed an application for supplemental security income ("SSI"). His alleged disability onset date is October 1, 2016. Marshall's application was denied at the initial administrative level. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing by video on September 4, 2019 and denied Marshall's claims on September 25, 2019. Marshall requested a review of the ALJ's decision by the Appeals Council, which declined review on July 20, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of July 20, 2020.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Marshall's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 17. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be reversed and remanded.

## I. STANDARD OF REVIEW[2]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted).

---

[2] In general, the legal standards are the same whether a claimant seeks a period of disability and disability insurance benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

"Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Marshall bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his former occupation?

> (5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. RELEVANT FACTUAL BACKGROUND

Marshall was born on October 9, 1962 and was 53 years old on his alleged onset date. R. 175, 197. At the hearing, Marshall testified that he could not work because of chronic obstructive pulmonary disease ("COPD"), back problems, pain and swelling in his knee, and pain from a previous gunshot in his left leg. R. 58–61, 62–64. He also testified that he is afraid to be in public and has problems with authority figures because of his time spent in prison. R. 64–65. In his disability report, Marshall listed heart, back, and knee problems as the primary medical conditions that prevent him from working. R. 208.

Marshall was in special education classes throughout high school, but

ultimately graduated. R. 55, 209.  He testified that he could read some things but there were words he could not understand and that he probably read below a 5th or 6th grade level. R. 56.  For instance, he said he cannot read a menu at a restaurant. R. 56.  He has past work experience working on the assembly line as a live hanger at a chicken plant, as well as some construction work. R. 57, 200–01, 209.  He lives with a "long time friend" and his sister "take[s] care of him and feed[s] him." R. 55, 214.  He does not drive and does not have a driver's license. R. 56.

The ALJ issued his decision on September 25, 2019. R. 32.  Under step one of the five-step evaluation process, he found that Marshall has not engaged in substantial gainful activity since October 31, 2017, the application date. R. 22.  The ALJ concluded that Marshall suffers from the severe impairments of mild degenerative disc disease of the lumbar spine, mild COPD, and major depressive disorder. R. 22–24.  The ALJ found that Marshall also suffered from the non-severe impairments of status post closed right femoral shaft fracture, right fourth metacarpal fracture, status post open reduction and internal fixation, and right hydrocele. R. 22–23.  On the other hand, the ALJ found that there was insufficient evidence to establish a medically determinable impairment related to Marshall's heart or his intellectual functioning. R. 23–24.  In so doing, the ALJ discounted the State Agency consultative examining psychologist's full-scale IQ of 47, verbal comprehension index of 52, perceptual reasoning index of 56, working memory of 55, and

processing speed index of 56 based on the analysis of a State Agency reviewing psychologist, who concluded that these low scores were inconsistent with Marshall's work history and other evidence in the record. R. 23–24.

The ALJ found that Marshall's medically determinable impairments cause significant limitations in his ability to perform basic work activities (R. 22), but concluded at step three of the analysis that none of Marshall's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 24–26.

Before proceeding to the fourth step, the ALJ determined that Marshall had the residual functional capacity ("RFC") to perform a limited range of medium work. R. 26.  More specifically, the ALJ found that Marshall had the following limitations with respect to medium work, as defined in 20 C.F.R. § 416.967(c):

> frequent climbing or ramps and stairs; no climbing of ladders, ropes or scaffolds; and frequent balancing, stooping, kneeling, crouching, and crawling.  He must avoid concentrated exposure to extreme temperatures, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants, and hazards such as open flames, unprotected heights, and dangerous moving machinery.  He is also limited to unskilled work, which is simple, repetitive, and routine.  His supervision must be simple, direct, and non-confrontational.  He may need intermittent reminders and supervision (one to two extra times per day).  Interpersonal contact with supervisors and coworkers must be incidental to the work performed, e.g., assembly work but he must not be required to work at fast-paced production line speeds.  He should have only casual contact with the general public.  He should have only occasional, gradually-introduced workplace changes.  He must have all normal, customary rests and work breaks.  He will need explicit instructions in maintaining an employable appearance.  He can set

> ordinary daily work goals, but may need assistance with long-term or complex planning. He should not be required to travel as part of his work duties to anywhere except local and familiar places.

R. 26. At the fourth step, the ALJ considered Marshall's age, education, work experience, and RFC in determining that he was not capable of performing his past relevant work as a poultry hanger. R. 30. However, the ALJ determined that there were other jobs existing in the national economy that Marshall could perform, including work as an industrial sweeper-cleaner and a laundry worker I. R. 31. Therefore, the ALJ concluded that Marshall had not been under a disability since October 31, 2017, the date the application was filed. R. 32. Based on these findings, the ALJ denied Marshall's application for SSI. R. 32.

## IV. DISCUSSION

Marshall makes three arguments in favor of remand. He first argues that the ALJ erred when he failed to include intellectual functioning as a severe impairment and wrongly held that there was insufficient evidence to establish an intellectual disorder. Doc. 13 at 19–21. Second, he argues that he is entitled to benefits under Listing 12.05B. Doc. 13 at 21–24. Finally, Marshall contends the ALJ improperly weighed the examining psychologist's opinion. Doc. 13 at 24–27. The court concludes that reversal is proper under Marshall's first argument.

At step two of the sequential evaluation process, the ALJ must gauge whether the claimant has a medically determinable impairment (or combination of

impairments) that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). This step in the disability evaluation process is a "threshold inquiry," under which "only the most trivial impairments are to be rejected." *McDaniel*, 800 F.2d at 1031; *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015). A claimant's burden at this stage is "mild." *McDaniel*, 800 F.2d at 1031.

Here, the ALJ found that there "is insufficient evidence to establish a medically determinable impairment related to the claimant's . . . intellectual functioning."[3] R. 23. In other words, the ALJ did not find Marshall's intellectual functioning to be an impairment, even a non-severe one. This finding is problematic for two reasons.

First, the ALJ factored Marshall's intellectual functioning into his formulation of the RFC. In fact, the majority of the limitations in the RFC relate to Marshall's intellectual functioning. The incorporation of limitations for an alleged impairment that the ALJ has deemed not to be a medically determinable impairment does not comport with the law or the sequential evaluation process. *See McDaniel*, 800 F.2d at 1030.

---

[3] The Commissioner argues that "a claimant's failure to allege an impairment defeats the claimant's later contention that the ALJ did not properly consider the impairment." Doc. 18 at 7. This is an overstatement. Instead, in *Duffy v. Commissioner of Social Security*, 736 F. App'x 834, 837–38 (11th Cir. 2018), the Commissioner's authority for this position, the Eleventh Circuit found that the ALJ did not have a duty to consider an impairment that the claimant did not allege. Here, however, the ALJ considered Marshall's intellectual functioning and incorporated intellectual limitations into the RFC even though Marshall did not explicitly list it as an impairment.

Second, substantial evidence does not support the ALJ's finding that intellectual disability was not at least a non-severe impairment. As recognized by the ALJ's long list of intellectual limitations in the RFC, there is ample evidence in the record of some deficits in Marshall's intellectual functioning. But the record reflects that the ALJ based his rejection of an impairment purely on his discrediting of Marshall's IQ score. This finding was in error.

In general, for an ALJ to discredit an IQ score, the evidence must have "overwhelmingly indicated that the claimant [is] not mentally retarded and likely attempted to tailor results to effect a desired outcome." *Siron v. Comm'r Soc. Sec. Admin.*, 556 F. App'x 797, 799 (11th Cir. 2014) (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986); *Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984)). There is no such evidence here. Instead, the ALJ discredited the State Agency examining physician's full-scale IQ score based on a review of other evidence regarding adaptive functioning[4] as discussed by the State Agency

---

[4] On remand, the ALJ should consider whether Marshall has the degree of adaptive functioning necessary to overcome the deficits associated with his low IQ scores. As one district court in the Eleventh Circuit has observed, the "caselaw addressing . . . 'adaptive functioning' . . . suggests that the adaptive functioning must be significantly inconsistent with the I.Q. score. An ability to do simple daily activities and simple jobs is not enough." *Monroe v. Astrue*, 726 F. Supp. 2d 1349, 1355 (N.D. Fla. 2007) (analyzing cases). For instance, in the oft-cited case of *Popp*, 779 F.2d 1497, the Eleventh Circuit upheld the ALJ's finding that the claimant was not mentally disabled notwithstanding an IQ score of 69, where the claimant had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs including as an administrative clerk, statistical clerk, and algebra teacher. Here, in contrast, Marshall attended special education courses while in school, has never held a skilled position, and has never managed others.

reviewing psychologist. The ALJ did not make a finding as to the validity of the administration of the IQ test or any evidence of malingering.

Additionally, the ALJ did not identify any medical evidence that supports his decision to discredit Marshall's IQ score. When the Eleventh Circuit has found that an ALJ properly discredited an IQ score or an accompanying medical opinion based on a claimant's daily activities and behavior, there also was medical evidence supporting the ALJ's decision. *See, e.g., Perkins v. Comm'r, Soc. Sec. Admin.*, 2014 WL 223905, at *3 (11th Cir. Jan. 22, 2014) ("The ALJ's decision for not crediting [a physician's] opinion that [the claimant] suffered from mental retardation was supported by substantial evidence, as [the] opinion was based on contradictory claims by [the claimant] and inconsistent with other medical opinions."); *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 984–85 (11th Cir. 2013) (concluding that substantial evidence supported the ALJ's finding that the claimant lacked the required level of deficits in adaptive functioning to meet Listing 12.05 where five separate medical opinions attested to the claimant's ability to function at a higher level than her IQ scores represented); *Smith v. Comm'r of Soc. Sec.*, 535 F. App'x 894, 897 (11th Cir. 2013) ("Given that the administering physician . . . felt that [the claimant's] IQ scores underestimated her intelligence, the ALJ properly determined that [the claimant] did not present a valid IQ score of 60 through 70.").

For these reasons, the court finds that the ALJ erred in his evaluation of

Marshall's alleged mental impairment. Therefore, the decision is due to be reversed because the ALJ applied incorrect law or at least failed to provide the court with sufficient reasoning to determine that he properly applied the law. *Grant*, 255 F. App'x at 375–76 (citing *Keeton*, 21 F.3d at 1066). Because of this conclusion, the court does not address Marshall's remaining arguments.

## V.  CONCLUSION

For these reasons, the court concludes that the ALJ's determination that Marshall is not disabled is not supported by substantial evidence. The decision of the Commissioner is due to be reversed and remanded for further proceedings consistent with this memorandum opinion. An appropriate order will be entered separately.

DONE and ORDERED on January 31, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE